IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BILLY BUDD SULLIVAN,<br><br>                Plaintiff,<br><br>    vs.<br><br>CHICAGO TITLE INSURANCE<br>COMPANY,<br><br>                Defendant. | CV 16-98-M-DLC-JCL<br><br><br>FINDINGS AND<br>RECOMMENDATION |

Before the Court is Defendant Chicago Title Insurance Company's ("Chicago Title") Fed. R. Civ P. 56 motion for summary judgment. Plaintiff Billy Sullivan, proceeding pro se, filed a brief in response to the motion, but he did not file any evidentiary material in support of his response, nor did he identify any discovery materials or sworn testimony to support his opposition to the summary judgment motion. Sullivan also did not file a statement of disputed facts as required by Local Rule 56.1(b). Instead, Sullivan's sole assertion in his response brief contends that the facts on which Chicago Title relies and represents as undisputed are, in fact, disputed. But he does not elaborate further, and he fails to identify any specific facts to support his assertion. Thus, for the reasons

discussed, the Court recommends Chicago Title's motion be granted.

I.    **Background**

      Sullivan commenced this action seeking to obtain compensation from a title insurance policy that Chicago Title issued to him insuring real property rights and interests he acquired in a parcel of land near Trego, Montana in 1993. Sullivan alleges various defects in his real estate title and interests have arisen. He asserts that multiple people own his real property, and that others have claimed various easement interests in the real property adverse to his interests.

      Sullivan's allegations further reference undescribed and undefined "problems" with his property which were not disclosed to him before he acquired it. And he also complains that crime has occurred in the area of his real property due to the easement issues, such as trespassing, vandalism, theft, destruction of property, and drug use.

      Sullivan alleges he has sustained damages based on the defects in the title to his property, and the various problems associated with his property, all of which he alleges Chicago Title has refused to remedy. He contends Chicago Title is liable under its insurance policy for the title defects, and he alleges it is obligated to compensate him for his damages. He requests approximately $200,000 in compensatory damages.

Sullivan's pleading asserts he is a citizen of Montana, and he alleges Chicago Title's principle place of business is in Omaha, Nebraska.  Thus his pleading sufficiently invokes the Court's diversity of citizenship jurisdiction under 28 U.S.C. § 1332.

Chicago Title moves for summary judgment dismissing Sullivan's complaint.  It asserts Sullivan's claims are not covered under the terms of the title insurance policy it issued to him.

## II.   Applicable Law

### A.  Summary Judgment

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

Once the moving party has satisfied its burden, summary judgment is appropriate if the non-moving party fails to designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Cattrett*, 477 U.S.  317, 324 (1986).  The opposing party must identify evidence demonstrating that a dispute as to any

particular material fact is genuine. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party's burden is significant as he "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party must support an assertion of fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations [...], admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). *See also* L.R. 56.1(a)(2) and (b)(2).

In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

Finally, because Sullivan is proceeding pro se the Court must construe his documents liberally and give them "the benefit of any doubt" with respect to Chicago Title's summary judgment motion. *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999). *See also Erickson v. Pardus* 551 U.S. 89, 94 (2007).

4

## B.  Application of Montana Law

Because jurisdiction over this action is founded upon diversity of citizenship, the Court applies the substantive law of Montana, the forum state. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

## III.  Discussion

## A.  Statute of Limitations

Chicago Title asserts Sullivan's claims under its title insurance policy are barred by the eight-year statute of limitations applicable to actions upon a contract in writing.  Mont. Code Ann. § 27-2-202(1).  Chicago Title represents that when it asked Sullivan to describe the first time he recognized the defects in the title to his property he responded by stating it "started before I bought it and it was not disclosed and then it was made known shortly after moving in[.]"  (Doc. 20-11 at 3 of 5.)[1]  Thus, Chicago Title asserts Sullivan's claims for defects in his title accrued around 1993 and are barred by the eight-year statute of limitations.

In his brief in opposition to Chicago Title's motion, Sullivan fails to present any argument, nor did he identify any evidentiary material suggesting that any of

---

[1]Chicago Title did not provide the Court with the text of the interrogatories it posed to Sullivan.

his claims for defects in his title accrued within the eight year period preceding the commencement of this action.  Therefore, because Sullivan has not satisfied his burden on summary judgment, and based upon the record before the Court, Sullivan's claims are barred by the applicable statute of limitations, and his claims should be dismissed.

Nonetheless, in view of Sullivan's pro se status, and given that the record does not expressly establish a clear date of accrual for each of Sullivan's multiple claims for defects in his title, the Court will proceed to address Chicago Title's summary judgment motion as it applies to the merits of Sullivan's claims.

### B.  Breach of Title Insurance Contract

Sullivan's claims are predicated on the assertion that defects exist in the title to his real property entitling him to receive insurance proceeds from Chicago Title's insurance policy covering the asserted defects.  He contends that Chicago Title has breached the contract by failing to pay him the benefits to which he is entitled.  Sullivan's claims necessarily turn on the terms of coverage provided by, and exclusions from the subject policy.

Under Montana law, the proper construction and interpretation of an insurance contract is a question of law for the court to resolve.  *Modroo v. Nationwide Mutual Fire Ins. Co.*, 191 P.3d 389, 395 (Mont. 2008).  The courts

examine insurance contracts as a whole, and do not give special deference to specific clauses in the contract. *Id*. The courts must "reconcile [the contract's] various parts to give each meaning and effect." *Farmers Alliance Mutual Ins. Co. v. Holeman*, 961 P.2d 114, 119 (Mont. 1998). The courts must interpret insurance policy provisions, terms, and words "according to their usual, common sense meaning as viewed from the perspective of a reasonable consumer of insurance products." *Allstate Ins. Co. v. Wagner-Ellsworth*, 188 P.3d 1042, 1046 (Mont. 2008) (quotation and citation omitted). If the language of the policy is clear and explicit the court "must enforce it as written", and may not rewrite the contract. *Id*.

Insurers are free to contractually exclude specific circumstances from coverage under an insurance policy. And an otherwise valid and enforceable exclusion is sufficient to bar coverage under a policy. *American Family Mutual Ins. Co. v. Livengood*, 970 P.2d 1054, 1057 (1998). But in view of the fundamental protective purpose of an insurance policy, exclusions from coverage are narrowly construed. *Revelation Industries, Inc. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, 929 (Mont. 2009).

In general, the party seeking the benefit of a particular provision of an insurance policy bears the burden of proving its application. *Travelers Casualty*

*and Surety Co. v. RIBI Immunochem Research, Inc.*, 108 P.3d 469, 476-77 (Mont. 2005).  Accordingly, an insured bears the initial burden of establishing that a policy covers a particular claim, and the insurer bears the burden of proving the application of an exclusion from coverage.  *Id*.

### 1.    Other Owners of Sullivan's Property

Sullivan complains that he is not the sole owner of his property in that there are others who may also claim ownership in the subject property.  In his responses to Chicago Title's discovery requests Sullivan asserted that "various yahoos said that they own [his] property" based upon "squatters right" for living and hunting on the property.  (Doc. 20-11 at 3 of 5.)  He further asserts that county officials, an attorney, a state court judge, and county deputies have testified or stated at various times that Sullivan does not own his property.  But the Court finds the record does not support Sullivan's contention that he is not the sole owner.

Under Montana law, a title insurer is obligated only to "investigate the documents properly recorded [in the public record...] which themselves, or through their contents, impart constructive notice of liens and encumbrances, including easements."  *Miller v. Title Insurance Co. of Minnesota*, 987 P.2d 1151, 1155 (Mont. 1999).  The public records an insurer is obligated to investigate include only documents in the offices of the county clerk and recorder and the

8

clerk of court.  *Id*.

Chicago Title confirms that it is the insuring underwriter for the title insurance policy covering Sullivan's real property rights and interests that are the subject of this action.  But Chicago Title asserts there exists no evidence in the public records of any other person or entity who holds title to Sullivan's property.

The public records reflect that Sullivan acquired the subject property through a contract for deed transaction he entered in 1993 with the previous owner in the chain of title, Matthew McCarthy.  On April 2, 1998, McCarthy's Warranty Deed granting the property to Sullivan as the sole grantee was filed with the Lincoln County Clerk and Recorder.  (Doc. 20-2.)  Further, based on a litigation guarantee Chicago Title obtained relative to this civil action, the public records reflect that Sullivan is still presently the sole owner of the of the subject property. (Doc. 20-9 at 3 of 6.)

Thus, the record reflects that Sullivan is the sole owner of his property. There exists no other individual or entity in the public records of Lincoln County, other than Sullivan, that holds title to Sullivan's property.  And Sullivan has neither presented, nor identified any evidentiary material suggesting another person or entity actually owns an interest in the title to his property.  Therefore, Sullivan's claim that other owners of his property exist lacks merits.

Furthermore, Chicago Title's insurance policy excepts or excludes from coverage under the policy loss or damage caused by "[r]ights or claims of parties in possession not shown by the public records."  (Doc. 20-1 at 4 of 5.)  Thus, to the extent Sullivan contends there are others who claim to hold title to his property who are not shown in the public record, those purported rights or claims by others are not covered under this policy.  Consequently, Chicago Title's motion should be granted with respect to Sullivan's claims regarding other purported owners.

### 2.   <u>Easements on Sullivan's Property</u>

Sullivan contends there exists various easements burdening his property for which he is entitled to coverage and compensation under Chicago Title's insurance policy.  But for the reasons discussed, there exists no evidence of any other easements subject to coverage and compensation under the policy.

Chicago Title's insurance policy disclosed to Sullivan all existing easements encumbering his property that were found within the public record.  The easements of public record included, inter alia, (1) an easement conveyed to Interbel Telephone Cooperative, (2) a reservation of 6.25% of the oil, gas and other minerals produced from the property, (3) a roadway easement on an existing road across the property, (4) the Sellers' reservation of rights to use the private road which Sullivan also uses to access his property, and (5) easements for above

10

or below ground electrical lines, telephone lines, and water and waste lines.  (Doc.

20-1 at 4-5 of 5.)  And the insurance policy expressly excludes coverage for loss

or damage caused by these specific easements expressly identified in the policy.

(*Id*.)

      The evidence of record suggests Sullivan is complaining about easements,

such as the Interbel easement and telephone line easements, which are identified in

the title insurance policy and excluded from policy coverage.  (Doc. 20-12 at 4 of

4.)  Therefore, to the extent Sullivan seeks to obtain insurance policy proceeds on

account of easements identified in the policy, those claims are excluded from

coverage.  Furthermore, in response to Chicago Title's motion, Sullivan does not

present or identify any evidential material suggesting there exists any additional

easements that are of public record but were not identified in Chicago Title's

policy.  Therefore, Sullivan has not identified any further public record easements

for which Chicago Title would be obligated to compensate Sullivan.

      Alternatively, Sullivan's claims suggest there may exist easements

encumbering his property which are not of public record.  But Chicago Title's

insurance policy excepts or excludes from coverage under the policy loss or

damage caused by "[e]asements, or claims of easements, not shown by the public

records."  (Doc. 20-1 at 4 of 5.)  Again, to the extent Sullivan asserts that others

hold easement interests which encumber his land but which are not of public record, those interests are excluded from coverage under Chicago Title's policy.

Based on the foregoing, Chicago Title is entitled to summary judgment on Sullivan's claims asserting that easements exist burdening his property which Chicago Title is obligated to cover under its policy and provide compensation.

### 3.   Illegal, Intentional or Criminal Acts

Sullivan's pleading asserts that criminal activities have occurred on his property due to the easement issues.  Those activities allegedly include incidents of trespassing, vandalism, theft, destruction of property, and drug use.

Chicago Title argues that its title insurance policy does not provide coverage for third parties' crimes against Sullivan's property.  In general, and as a matter of law, a "title insurance policy" is a policy that is intended to cover an insured against loss or damage caused by "defects in or liens or encumbrances on the title to the stated property", "unmarketability of the title to the stated property", or "invalidity or unenforceability of liens or encumbrances on the stated property."  Mont. Code Ann. § 33-25-105(12) (defining a "title insurance policy" that is governed by the Montana Title Insurance Act, Mont. Code Ann. § 33-25-104 *et seq.*)  Thus, in general, intentional or criminal acts committed by third parties against an insured's property are not within the protective purposes of, and

12

the coverage provisions of a title insurance policy.  Such incidents do not affect an insured's real property legal rights and interests.

In the context of the subject matter of this case and the pending summary judgment motion, it is Sullivan's burden to demonstrate that the insurance policy covers any particular claim he has.  *Travelers Casualty and Surety Co. v. RIBI Immunochem Research, Inc.*, 108 P.3d 469, 476-77 (Mont. 2005).  But in response to Chicago Title's summary judgment motion, Sullivan has not argued for coverage of the alleged criminal activities.  And he has not presented or identified any evidentiary material suggesting the asserted incidents of criminal activities are covered by Chicago Title's insurance policy.  Therefore, Chicago Title is entitled to summary judgment dismissing Sullivan's claims of criminal conduct.

## IV.   Conclusion

For the reasons discussed, IT IS RECOMMENDED that Chicago Title's summary judgment motion be GRANTED, and this action be DISMISSED.

DATED this 31st day of May, 2017.

Jeremiah C. Lynch
United States Magistrate Judge

13